## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

IN RE: MICHAEL & JOANN HOLOKA

                Debtor.

                Chapter 11
                Case No.: 08-50016

_____/

MICHAEL & JOANN HOLOKA,

        Plaintiff(s)

vs.

                AP NO.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR HARBORVIEW MORTGAGE
LOAN TRUST MORTGAGE LOAN PASS THROUGH
CERTIFICATES, SERIES 2006-9,

        Defendant.

_____/

## COMPLAINT SEEKING DAMAGES IN CORE AND NON-CORE ADVERSARY PROCEEDING FOR VIOLATION OF THE DISCHARGE INJUNCTION

### Introduction

1. This action seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with its efforts to collect a debt discharged by the debtors' bankruptcy. Defendant's conduct involves falsely representing that a discharged debt is still owed, the sole purpose of which is to coerce the payment of a discharged debt. Plaintiffs seek monetary, declaratory and injunctive relief based on violations of 11 U.S.C. § 524.

2. This action is also filed to enforce the Order of Discharge duly entered in this Chapter 11 case and to enforce and to implement other Bankruptcy Code provisions and Rules related thereto, and to prevent an abuse of process and to preclude the frustration of the orderly discharge of the claims in this case.

### Jurisdiction

3. Jurisdiction is conferred on this Court pursuant to the provisions of § 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 11 case under Title 11 and concerns property of the Debtors in that case.

4. This Court has both personal and subject matter jurisdiction to hear this case pursuant to § 1334 of Title 28 of the United States Code, § 157(b)(2) of Title 28 of the United States Code.

5. This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiffs consent to the entry of a final order by the Bankruptcy Judge.

6. Venue lies in this District pursuant to § 1391(b) of Title 28 of the United States Code.

## Parties

7. The Plaintiff(s), Mike Holoka and his wife, Joanne Holoka, are citizens and residents of Florida but were residents of Illinois when the Chapter 11 case was filed. They own property at 2421 W. County Highway 30A, Unit D-305, Santa Rosa Beach, Florida 32459 (the "Property")

8. On June 9, 2006, MICHAEL C. HOLOKA and JOANN M. HOLOKA executed and delivered a promissory note in favor of COUNTRYWIDE BANK, N.A. and a mortgage securing payment of the aforesaid note to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK. N.A., which mortgage was recorded on June 21. 2006, in Official Records Book 2723, Page 3252,of the Public Records of WALTON County, Florida, and which mortgaged the property described therein, then owned by and in possession of said mortgagor, a copy of said note and mortgage being attached hereto, marked Plaintiffs Exhibits "A" and "B", and made a part of this Complaint.

9. The Defendant, DEUTSCHE BANK NATIONAL TRUSTCOMPANY, AS TRUSTEE FOR HARBORVIEWMORTGAGE LOAN TRUST MORTGAGE LOAN PASS THROUGH CERTIFICATES, SERIES 2006-9, is a financial institution which conducts business within the State of Florida.

10. Said mortgage was subsequently assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, N.A. to BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP by virtue of an Assignment of Mortgage, recorded on January 4, 2012 in Official Records Book 2880, Page 4656. Instrument No. 1180472 of the Public Records of WALTON County, Florida. A copy of said Assignment of Mortgage being attached hereto, marked Plaintiffs Exhibit "C" and made a part of this Complaint.

11. Said mortgage was subsequently assigned from BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA

COUNTRYWIDE HOME LOANS SERVICING, LP to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-9 by virtue of an Assignment of Mortgage, recorded November 14,2012 in Official Records Book 2904, Page 4593 of the Public Records of WALTON County, Florida. A copy of said Assignment of Mortgage being hereto, marked Plaintiff's Exhibit "D" and made a part of this Complaint, hereinafter referred to as DEUTSCHE BANK.

12. The said note and mortgage are owned and held by DEUTSCHE BANK. Exhibits A-D are attached to the foreclosure complaint filed by DEUTSCHE BANK which is attached hereto.

13. On January 15, 2008, the plaintiffs sought protection from their creditors by filing a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Florida, Panama City Division.

14. Defendant, Countrywide Home Loans, predecessor in interest of Deutsche Bank, was included in the original schedules as a secured creditor. See Exhibit E attached herein and incorporated by reference.

15. Deutsche Bank filed a Motion to Lift the Automatic Stay (Exhibit F) which was consented to by the Plaintiffs/Debtors (Exhibit G) and the attached Order was entered (Exhibit H).

16. The Plaintiff's filed their Second Amended Chapter 11 Plan which provided for the surrender of the subject property in satisfaction of the subject debt (Exhibit I) and said Plan was confirmed on May 18, 2009, nunc pro tunc April 8, 2009 (Exhibit J).

17. Prior to filing their Petition for Relief, Deutsche Bank, through its counsel, delivered documents to the Plaintiffs to convey their property in lieu of foreclosure.

18. The Plaintiffs offered to convey the property in lieu of foreclosure after confirmation and Deutsche Bank never accepted the offer.

19. The Plaintiffs remained liable for home owner association fees with Adagio Community Association, Inc. which are a non-dischargeable obligation under title 11 but which were to be paid by Deutsche Bank under the confirmed Chapter 11 Plan.

20. Deutsche Bank failed or refused to timely foreclose on the property leaving the Plaintiff's liable for non-dischargeable homeowner association fees which accumulated in excess of $50,000.00.

21. Deutsche Bank is subject to Title 12 U.S.C. §29 regarding retention of real property by banks and Title 12 U.S.C. §93 for violations of Title 12.

22. Deutsche Bank by failing or refusing to foreclose its lien was effectively coercive in violation of the discharge injunction and a subterfuge in complying with Title 12 U.S.C. §29 by intentionally delaying taking the property into inventory and requiring the Plaintiffs/Debtors to be responsible for the non-dischargeable homeowner association fees.

23. Deutsche Bank initiated the attached foreclosure proceeding in the Circuit Court in and for Walton County, FL, on December 20, 2012, see Exhibit A-D attached and has sought a deficiency judgment against the Plaintiffs/Debtors in violation of the discharge injunction.

24. The Plaintiffs/Debtors filed an Answer with Affirmative Defenses (see Exhibit K) and Deutsche Bank has never dismissed its assertion or claim for a deficiency.

25. By failing to accept the property in lieu of foreclosure and by delaying foreclosure on the property, the Plaintiffs have lost the use and enjoyment of the property, they have lost the rents, they have been responsible for maintenance and upkeep on the property.

26. On September 18, 2009, the Plaintiffs were granted a discharge of all dischargeable debts pursuant to 11 U.S.C. § 524. (Exhibit L) The Plaintiffs allege that this Discharge included the debt to Deutsche Bank.

27. The Complaint seeking a deficiency filed against Mr. and Mrs. Holoka is an attempt to collect the debt that was previously discharged.

28. Plaintiffs allege that by filing the above mentioned complaint and continuing to pursue the lawsuit with knowledge of the Debtors' discharge and failing or refusing to make them whole for maintaining the property and paying the HOA fees which should have been the responsibility of the Defendant, Deutsche Bank, the Defendant is attempting to collect a debt that was properly discharged in the Plaintiffs' Chapter 7 bankruptcy case.

29. The actions of the Defendant as alleged herein constitute willful, intentional, gross and flagrant violations of the provisions of Section 524 of Title 11 of the United States Code.

30. The actions of the Defendant as alleged herein are acts in violation and contempt of the Order of Discharge entered by this Court.

31. The Defendant has willfully ignored its obligations under the confirmed Chapter 11 Plan, the Order Confirming Plan, and under the Bankruptcy Code.

32. The Plaintiffs have been severely agitated, annoyed, traumatized, emotionally damaged and have otherwise been unduly inconvenienced by the actions of the Defendant.

33. More specifically, after receiving the aforementioned lawsuit, Plaintiffs were extremely

anxious and nervous and suffered symptoms such as emotional anxiety related to the stress resulting from fear of the impending lawsuit.

## WILLFUL VIOLATION OF DISCHARGE INJUNCTION

34. The allegations of paragraphs 1-30 above are realleged and incorporated herein by reference.

35. The actions of Defendant in this case, in seeking to collect payment on a discharged debt by initiating legal action and deceptively attempting to coerce the debtor are in violation of the discharge injunction entered in Plaintiffs' bankruptcy case pursuant to 11 U.S.C. § 524, and constitute contempt of bankruptcy court orders.

36. The Plaintiffs allege that the actions of the Defendant in seeking to collect on a debt after the debtors' lawful discharge constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. Section 524.

37. The conduct of the Defendant in this case has substantially frustrated the discharge order entered by this Court and has caused the debtors unwarranted and unnecessary time, effort and expense in seeking to enforce rights guaranteed by the Bankruptcy Code, by Contract, and by prior actions of the Defendant.

38. In order to carry out the provision of the Code and to maintain its integrity this Court must impose actual damages, punitive damages and legal fees against the Defendant pursuant to the provisions of Section 105 of the Code.

39. In order to protect debtors who have secured a full discharge thereunder this Court must impose sanctions against the Defendant for its misconduct in this case.

40. As a result of the Defendant's violation of 11 U.S.C. Section 524, the Defendant is liable to the Plaintiffs for actual damages, punitive damages and legal fees under § 105 of Title 11 of the United States Code.

41. The Court should take into consideration in assessing damages the damages recoverable pursuant to 12 U.S.C. §93 for violations of Title 12 of the United States Code.

42. The Affidavit of Mike Holoka in support of the Plaintiffs' Adversary Complaint is attached hereto and incorporated herein by reference as if set forth fully herein.

**WHEREFORE,** the Plaintiff(s) having set forth their claims for relief against the Defendant(s) respectfully pray of the Court as follows:

A. That the Plaintiff(s) have and recover against the Defendant(s) a sum to be determined by the Court in the form of actual damages;

B. That the Plaintiff(s) have and recover against the Defendant(s) a sum to be determined by the Court in the form of statutory damages, compensatory damages,

and interest;

C.  That the Plaintiff(s) have and recover against the Defendant(s) a sum to be
    determined by the Court in the form of punitive damages;

D.  That the Plaintiff(s) have and recover against the Defendant(s) all reasonable legal
    fees and expenses incurred by their attorney;

E.  That the mortgage be cancelled of record as a sanction for violation of the discharge
    injunction for holding the Plaintiffs/Debtors responsible for maintenance, contents
    insurance, and homeowner association fees.

F.  That the Court grant such further relief as is just and proper under the facts of the
    case.

Respectfully submitted this __26th__ day of _____June_____, 2014.

/s/ Charles M. Wynn
Charles M. Wynn, Esq.
P. O. Box 146
Marianna, FL 32447-0146
(850)526-3520
FL Bar #0241695
Attorney for Plaintiffs/Debtors
court@wynnlaw-fl.com
Charles@wynnlaw-fl.com

IN THE CIRCUIT COURT OF THE
FIRST JUDICIAL CIRCUIT IN AND
FOR WALTON COUNTY, FLORIDA
CIVIL DIVISION

CASE NO.: 12CA 1004

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR HARBORVIEW
MORTGAGE LOAN TRUST MORTGAGE
LOAN PASS-THROUGH CERTIFICATES,
SERIES 2006-9
    Plaintiff

v.

MICHAEL C. HOLOKA; JOANN M. HOLOKA;
ADAGIO COMMUNITY ASSOCIATION, INC;
ANY AND ALL UNKNOWN PARTIES
CLAIMING BY, THROUGH, UNDER, OR
AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO
BE DEAD OR ALIVE, WHETHER SAID
UNKNOWN PARTIES MAY CLAIM AN
INTEREST AS SPOUSES, HEIRS, DEVISEES,
GRANTEES, OR OTHER CLAIMANTS; JOHN
TENANT, JANE TENANT, JOHN TENANT, and
JANE TENANT whose names are fictitious to
account for parties in possession
    Defendant(s)

2012 DEC 20 P 1: 31
WALTON CO FLORIDA
CLERK OF COURTS
FILED

## COMPLAINT

Plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR

HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH

CERTIFICATES, SERIES 2006-9, sues Defendant(s), MICHAEL C. HOLOKA; JOANN M.

HOLOKA; ADAGIO COMMUNITY ASSOCIATION, INC; ANY AND ALL UNKNOWN

PARTIES CLAIMING BY, THROUGH, UNDER, OR AGAINST THE HEREIN NAMED

INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE,

WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES,

HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; JOHN TENANT, JANE

PH # 13078



TENANT, JOHN TENANT, and JANE TENANT whose names are fictitious to account for parties in possession, and alleges:

## ACTION TO FORECLOSE MORTGAGE

1. This is an action to foreclose a mortgage on real property in WALTON County, Florida.

2. The Notice required by the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq, as amended, is attached hereto and incorporated herein.

3. On June 9, 2006, MICHAEL C. HOLOKA and JOANN M. HOLOKA executed and delivered a promissory note in favor of COUNTRYWIDE BANK, N.A. and a mortgage securing payment of the aforesaid note to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, N.A., which mortgage was recorded on June 21, 2006, in Official Records Book 2723, Page 3252, of the Public Records of WALTON County, Florida, and which mortgaged the property described therein, then owned by and in possession of said mortgagor, a copy of said note and mortgage being attached hereto, marked Plaintiff's Exhibits "A" and "B", and made a part of this Complaint.

4. Said mortgage was subsequently assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, N.A. to BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP by virtue of an Assignment of Mortgage, recorded on January 4, 2012 in Official Records Book 2880, Page 4656, Instrument No. 1180472 of the Public Records of WALTON County, Florida. A copy of said Assignment of Mortgage being attached hereto, marked Plaintiff's Exhibit "C" and made a part of this Complaint.

5. Said mortgage was subsequently assigned from BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-9 by virtue of an

PH # 13078

Assignment of Mortgage, recorded on November 14, 2012 in Official Records Book 2904, Page 4593 of the Public Records of WALTON County, Florida. A copy of said Assignment of Mortgage being hereto, marked Plaintiff's Exhibit "D" and made a part of this Complaint.

6. The said note and mortgage are owned and held by Plaintiff.

7. The above referenced Mortgage and Note were modified by virtue of a Modification Agreement dated July 15, 2009 and recorded in Official Records. A copy of said Modification Agreement is attached hereto as Exhibit "E".

8. Said property is now owned by Defendants MICHAEL C. HOLOKA and JOANN M. HOLOKA.

9. Said note and mortgage are in default in that the payment due August 1, 2007 and all subsequent payments have not been made.

10. Plaintiff declares the full amount due under said note and mortgage to be now due.

11. There is now due, owing and unpaid to Plaintiff from Defendants $895,679.30 on principal plus interest on said note and mortgage from July 1, 2007 together with late charges, title search expense for ascertaining necessary parties to this action, real estate taxes, insurance premiums, mortgage insurance premiums, costs and expenses incurred by Plaintiff in securing the property described in the mortgage, and attorney's fees all of which Plaintiff may become obligated to pay in order to protect the property described in the mortgage and to recover the sums due to the Plaintiff, all of which are secured by the lien of the mortgage herein sought to be foreclosed.

12. Defendant, ADAGIO COMMUNITY ASSOCIATION, INC, may have or claim some right, title or interest in or lien upon the property, herein sought to be foreclosed, arising or resulting from unpaid association assessments and/or other charges due it.

13. The Defendants JOHN TENANT and JANE TENANT, the names being fictitious to account for parties in possession, may have or claim some right, title or interest in and to the property herein sought to be foreclosed by virtue of an unrecorded lease or purchase option or by virtue of being in actual possession of same. The actual names of these Defendants are presently

PH # 13078

unknown to Plaintiff and its undersigned attorney.

14. All of the above-mentioned recordings in Official Records Book were in Official Records of WALTON County, Florida.

15. Plaintiff has obligated itself to pay the undersigned attorneys a reasonable fee for their services.

16. The Plaintiff further alleges that the claim, lien, right, title and interest of all the Defendants herein named and hereafter made parties to this suit are subject, subordinate and inferior to the right, title, interest and lien of the Plaintiff's mortgage herein sought to be foreclosed.

17. All conditions precedent to the institution of this action by the Plaintiff have been performed or have occurred.

18. Pursuant to the Fair Debt Collection Practices Act, you are advised that this law firm is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

WHEREFORE, the Plaintiff prays that the Court enter judgment foreclosing the mortgage, grant Plaintiff its reasonable attorney's fees, enter an order granting Plaintiff a writ of possession of the mortgaged property and such other or further relief as Plaintiff may be entitled to receive, and, if the proceeds of the sale are insufficient to pay Plaintiff's claim, a deficiency judgment.

Phelan Hallinan PLC
Attorney for Plaintiff
2727 West Cypress Creek Road
Ft. Lauderdale, FL 33309
Tel: 954-462-7000
Fax: 954-462-7001
Service by email: FL.Service@PhelanHallinan.com

By: _____

**Phelan Hallinan PLC**
Ashland Roberts, Esq., Florida Bar No. 89578
Emilio R. Lenzi, Esq., Florida Bar No. 0668273
Owei Z. Belleh, Esq., Florida Bar No. 617598
Attorney for Plaintiff

## VERIFICATION OF COMPLAINT

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged there in are true and correct to the best of my knowledge and belief.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR HARBORVIEW MORTGAGE
LOAN TRUST MORTGAGE LOAN PASS-THROUGH
CERTIFICATES, SERIES 2006-9

By: _Charlotte B Mustich_

Print: _Charlotte B Mistich_

Title: _Assistant Vice President_

Date: _12-7-12_

PH # 13078

NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. SECTION 1692 AS AMENDED

If this notice is the first notice that you have received from this office, please be advised of the following:

1.   The law firm of Phelan Hallinan PLC is deemed to be a "debt collector" under the Fair Debt Collection Practices Act. This communication is made in connection with an attempt to collect a debt, and any and all information obtained will be used for the purpose of collecting a debt.

2.   The amount of the debt due on the subject loan is $1,135,823.67 as of June 14, 2012. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown in the Complaint, an adjustment will be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 954-462-7000. Please provide us with information as to how to contact you.

3.   The plaintiff as named in the attached Complaint is the Creditor to whom the debt is owed, or is the servicing agent for the Creditor to whom the debt is owed. The law firm of Phelan Hallinan PLC represents the interests of the plaintiff.

4.   If the Creditor named as the plaintiff in the attached Complaint is not the original Creditor and if the Debtor makes a written request to the Creditor's law firm of Phelan Hallinan PLC within the thirty (30) days from the receipt of this notice, the address of the original Creditor will be mailed to the Debtor by the Creditor's law firm.

5.   The debt described in the Complaint and evidenced by the copy of the promissory note attached to it will be assumed to be valid unless the Debtor, within thirty (30) days after the receipt of this notice, disputes in writing the validity of the debt or some portion thereof.

6.   If the Debtor notifies the Creditor's law firm in writing within thirty (30) days of the receipt of this notice that the debt or any portion thereof is disputed, the Creditor's law firm will obtain a verification of the debt and a copy of the verification will be mailed to the Debtor by the Creditor's law firm.

7.   Written requests pursuant of this notice should be addressed to Phelan Hallinan PLC, 2727 West Cypress Creek Road, Ft. Lauderdale, FL 33309.

8.   The law does not require this law firm to wait until the end of the thirty-day (30) period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original Creditor within the thirty-day (30) period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.

PH # 13078



Prepared by JAMIE HENSON

## ADJUSTABLE RATE NOTE
(MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

JUNE 03, 2005                          FLORIDA
[Date]                              [City]                        [State]

2421 W. COUNTY HWY 30A, D305, SANTA ROSA BEACH, FL 32459
(Property Address)

1.  **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 858,500.00      (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed 115 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is Countrywide Bank, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  **INTEREST**

(A)  **Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of 7.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of 1.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B)  **Interest Rate Change Dates**

The interest rate I will pay may change on the first      day of AUGUST, 2005     , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C)  **Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates

* Florida PayOption ARM Note - MTA Index
1E31 8-FL (12/06)(d)                 Page 1 of 5



LOAN #: 139293905

(H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & ONE-QUARTER                percentage point(s)        3.250 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than        9.950  %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

3.   PAYMENTS

(A)  Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first                day of each month beginning on AUGUST 01, 2006             . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     JULY 01, 2046             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B)  Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 2,379.53         , unless adjusted under Section 3(F).

(C)  Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first                day of AUGUST, 2007             , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D)  Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than     7.500% of my prior monthly payment. This     7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number     1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

(E)  Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on

LOAN #: 139293805

the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

(F) Limit on My Unpaid Principal; Increased Monthly Payment
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN               percent
(     115  %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying any Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than normally and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) Required Full Payment
On the tenth          Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the Final Payment Change Date.

(H) Payment Options
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:
   (i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
   (ii) Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
   (iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

4.   NOTICE OF CHANGES
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.   LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that

exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

LOAN #: 139293805

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### 13. DOCUMENT TAX

The state documentary tax due on the Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____

MICHAEL C. HOLOKA                                    -Borrower

_____

ANN K. HOLOKA                                         -Borrower

_____                       -Borrower

_____                       -Borrower

Pay to the order of:

Countrywide Home Loans, Inc.

Without Recourse
Countrywide Bank, N.A.

By: _____            By: _____
Laurie Meder, SVP                  _____, SVP

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, N.A.

BY: _____
SUSAN AMADOR
COLLATERAL PROCESSING OFFICER

Florida PayOption ARM Note - SITA Index
1E218-FL (12/06)                          Page 5 of 5

Prepared by JANE HENSON

Countrywide Bank, N.A.

DATE:        06/08/2006
BORROWER: MICHAEL HOLOKA
CASE #
LOAN #
PROPERTY ADDRESS 2421 W. COUNTY HWY 30A, D305
             SANTA ROSA BEACH, FL 32459

Branch #: 0000310
6444 CAPTRAILWAY PARKWAY  4100
JACKSONVILLE, FL 32216
Phone: (866)785-5035
Br Fax No.: (999)888-0000

## PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated JUNE 08, 2006        , and is incorporated
into and amends and supplements the Note of the same date (the "Note") given by me to
Countrywide Bank, N.A.
(the "Lender") The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security
Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "BORROWER'S RIGHT TO PREPAY" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. Such an advance payment of Principal
is known as a "Prepayment." I may make partial or full Prepayments. When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so. The Note Holder will use all of my Prepayments to reduce the amount of Principal
that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the
Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note. If I make a partial Prepayment,
there will be no changes in the due dates of my monthly payments.  My partial Prepayment may reduce the
amount of my monthly payments after the first Change Date following my partial
Prepayment. However, any reduction due to my partial Prepayment may be offset by
an interest rate increase.

• Prepayment Penalty Addendum
1E287-XX (r12/04an)

Page 1 of 2




LOAN #: 139293805

If within the first THIRTY SIX months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment.

All other terms and conditions of the above referenced Note remain in full force and effect.

_____
MICHAEL HOLOKA                                          Borrower

_____
ANN M. HOLOKA                                           Borrower

_____
                                                        Borrower

_____
                                                        Borrower

## Allonge to Mortgage Note

**Loan Number:** ▮▮▮▮▮▮

**Borrower Name:** MICHAEL C HOLOKA & JO ANN M HOLOKA

**Loan Amount:** 858500

Pay to the order of:

Countrywide Home Loans, INC.

Without Recourse
Countrywide Bank, N.A.
By: _____ Lauris Meder, SVP

Pay to the order of:

Without Recourse
Countrywide Home Loans, Inc.
By: _____

Countrywide Bank, N A. to Countrywide Home Loans, Inc /Countrywide Home Loans, Inc. to Blank

CFN # 935377, OR BK 2929  Page 3232, Recorded 06/23/2006 at
INGLE, WALTON COUNTY CLERK OF COURT DOC STMP-M:  $3004.75 INT TAX:  $1717.00
Deputy Clerk J KELLEY

Case 14-05005-KKS    Doc 1   Filed 06/26/14   Page 21 of 28

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

This document was prepared by:
JAMIE NEWSON
AMERICA'S WHOLESALE LENDER

6443 SOUTHPOINT PARKWAY #300
JACKSONVILLE
FL 32216

———————— [Space Above This Line For Recording Data] ————————

[Doc ID #]

## MORTGAGE



EXHIBIT B

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated  JUNE 09, 2006            , together
with all Riders to this document.
(B) "Borrower" is
MICHAEL C MOLOKA, AND JO ANN M MOLOKA, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
Countrywide Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(E) "Note" means the promissory note signed by Borrower and dated  JUNE 09, 2006            . The
Note states that Borrower owes Lender
EIGHT HUNDRED FIFTY EIGHT THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 858,500.00      ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  JULY 01, 2046            .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
                                    Page 1 of 16
 -6A(FL) (0401)   CHL (08/05)(d)   TPF Mortgage Solutions, Inc. (800)801-7091      Form 3010  1/01
00394

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

- [ ] Adjustable Rate Rider   [ ] Condominium Rider   [ ] Second Home Rider
- [ ] Balloon Rider   [ ] Planned Unit Development Rider   [ ] 1-4 Family Rider
- [ ] VA Rider   [ ] Biweekly Payment Rider   [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

COUNTY of WALTON :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:

which currently has the address of

2423 W. COUNTY HWY 30A, U395, SANTA ROSA BEACH

[Street/City]

Florida    32459    ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payments or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

@ SAFL.J (0400)    CFB (0000000)    Page 3 of 11    Form 3010 1/01

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.